IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : Case No. 1:17-bk-bk-03078-HWV
    ALCOIL USA, LLC :
              Debtor : CHAPTER 11

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTOR-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

The Motion of Alcoil USA, LLC ("Debtor"), by and through its attorneys, Cunningham, Chernicoff & Warshawsky, P.C. for Entry of Interim and Final Orders (a) Authorizing the Debtor-In-Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; and (b) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 is as follows:

1. On July 26, 2017, the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code ("Code"). As a result thereof, the Debtor has been appointed debtor-in-possession and manages its assets and operates its business.

2. The Debtor is a Pennsylvania limited liability company engaged in the development, manufacturing, sales and applications of brazed aluminum heat exchangers for the air conditioning, refrigeration, heating (HVAC/R) and industrial process markets (the "Business").

3. The Debtor is continuing to operate its Business. In order to do so, the Debtor has certain cash needs.

4. The Debtor has continuing orders for its product and in order to produce such products, it is necessary to obtain parts and supplies. Many of the Debtor's suppliers are requiring payment upon delivery or in advance.

5. This Motion is filed under Sections 105, 361, 363 and 364 of the Code and Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure. The court has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and 1334, venue pursuant to 28 U.S.C. §§1408 and 1409 and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

## PRE-PETITION LIENS

6. The Debtor has a credit facility granted to it by Manufacturers and Traders Bank ("M&T"). The amount owed to M&T is believed to be approximately $580,000.00.

7. In order to secure the obligations owed by the Debtor to M&T, the Debtor granted M&T a security interest in certain of the Debtor's pre-Petition assets including equipment, machinery, accounts receivable and inventory.

8. The Debtor also granted a lien to an entity known as Sandhurst Equity Partners, L.P. ("Sandhurst") on the Debtor's various personal property including equipment, machinery, accounts receivable and inventory. Such lien was granted in order to secure a note granted by the Debtor to Sandhurst, as well as to secure certain lease payments to be made to Sandhurst by the Debtor.

9. The pre-Petition assets of the Debtor consist generally of accounts receivable of approximately $300,000.00, and inventory, machinery and equipment as well as intellectual property having a value of approximately $700,000.00.

10. The Debtor currently has an offer to sell its various personal property, excluding accounts receivable, for the total purchase price of $790,000.00. Included in the purchase price is an assumption by the buyer of certain liabilities for deposits held by the Debtor for the completion of certain projects in an amount up to $190,000.00 for a total consideration of up to $170,000.00. The price will be adjusted at closing based upon the amount of the deposits being assumed.

11. The buyer under the proposed agreement of sale is Advanced Cooling Technologies, Inc. ("ACT").

## THE NEED FOR FINANCING AND USE OF CASH

12. The Debtor currently has twenty-seven (27) employees. The Debtor is operating and needs to retain its employees to continue operations.

13. As part of the sale process, the buyer is requesting that the Debtor continue in operation.

14. The Debtor has minimal cash on hand and inventory. While it has approximately $300,000.00 in receivables, it will take a considerable period of time for these receivables to be collected. During the period of time within which the receivables will be collected the Debtor will not have sufficient cash flow with which to continue to operate.

15. The Debtor believes that it can operate profitably and reorganize as budgeted by the Debtor. Attached hereto as Exhibit "A" and made a part hereof is the Debtor's budget (the "Budget") for the period of August, 2017.

16. A review of the Budget sets forth that Debtor will have a cash flow shortage in July, 2017 of approximately $166,800.00 and a cash flow shortage in August, 2017 of approximately $92,800.00. The Debtor believes that it needs immediate financing in the amount of $160,000.00, which sum is needed within the next fifteen (15) days (the "Interim Funding"). The Debtor further believes it will need up to $274,000.00 in total financing in order for its operations to continue until such time as a sale occurs.

## PROPOSED FINANCING

17. The buyer, ACT, has offered to extend financing to the Debtor. Attached hereto as Exhibit "B" and made a part hereof is the agreement whereby ACT has agreed to purchase the assets of the Debtor as well as provide financing for the operations of the Debtor.

18. The significant terms of the Agreement between the Debtor and ACT is as follows:

   a. The total amount of the loan will be in the amount of $270,000.00.

   b. No interest will be charged.

   c. An initial advance of $160,000.00 will be made until such time until a final hearing is held on this matter.

   d. ACT will receive a lien on the Debtor's accounts receivable junior, however, to any lien of M&T Bank in the Debtor's accounts receivable, but superior in priority to the lien of Sandhurst.

4

e. To the extent there is a shortfall in the accounts receivable such that there is an insufficient amount available to repay ACT in full, then such shortfall will be on an unsecured basis.

f. Repayment will occur subsequent to closing on the sale of the Debtor's assets as receivables are collected and after payment in full of the loan owed to M&T Bank.

## INTERIM NEED FOR CASH

19. Set forth above and as set forth in the Budget which is attached hereto as Exhibit "A" are the cash needs of the Debtor. In order to assure the Debtor of its continued operations, the Debtor is requesting that it be awarded approval of the financing set forth above on an interim and emergency basis in an interim amount of $160,000.00 of the total amount of $270,000.00.

20. Unless the interim funding is awarded on an emergency basis, the Debtor may suffer irreparable harm. Further, the Debtor may not be able to close on the sale of its assets.

21. Bankruptcy Rule 4001(c)(2) provides that this Court may commence a final hearing on this Motion within fourteen (14) days after service of this Motion; however, an earlier hearing may be conducted to allow interim borrowing authority to the extent that authorization of the requested credit is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing. The Debtor believes that it is necessary that it continue to operate so that it can have the ability to move forward as to the sale of its assets. In the event the Debtor must cease operations, the Debtor believes the value of its assets will become much lower.

22. Therefore, as set forth above, the Debtor believes that unless the Court set a hearing date sooner than fourteen (14) days from the date of service of this Motion and grant interim emergency relief pending the final hearing on the Motion, that its estate may suffer immediate and irreparable harm pending a final hearing. The Debtor requests that an emergency hearing be set as early as possible on this Motion and that at such hearing interim authority be granted to the Debtor to borrow $160,000.00.

23. The Debtor also requests that at the final hearing on this Motion, that it be permitted to borrow the $270,000.00 set forth above.

24. Sandhurst concurs in this Motion and in the relief requested herein by the Debtor. Sandhurst further agrees to allow the lien to be granted to ACT to have priority over Sandhurst's lien in the Debtor's accounts receivable.

WHEREFORE, Debtor requests this Honorable Court enter an order:

    a. Setting an emergency hearing on this matter at the earlier possible date, with respect to the Debtor's incurring debt and borrowing money from Advanced Cooling Technologies, Inc.

    b. Providing that such lender shall have a lien up to the amount of any advance upon the Debtor's accounts receivable, junior and subordinate, however, in priority to the lien of M&T Bank, and having priority over any lien of Sandhurst and on the terms set forth in this Motion;

    c. Setting a final hearing on this matter as early as possible on or after fourteen (14) days from the filing date hereof;

    d. Pending the final hearing on this matter, granting interim authority to the Debtor as set forth in Paragraph (a) and up to the amount of $160,000.00;

    e. After the final hearing, grant all relief, borrowing authority and the lien status to Advance Cooling Technologies, Inc. as set forth above for the loan in the total amount of $270,000.00; and

  f. Award the Debtor such other and further relief as is just and proper.

          Respectfully submitted:

          CUNNINGHAM, CHERNICOFF
          & WARSHAWSKY, P.C.

          By: /s/ Robert E. Chernicoff
           Robert E. Chernicoff, Esquire
           Attorney I.D. No. 23380
           2320 North Second Street
           P. O. Box 60457
           Harrisburg, PA 17106-0457
           (717) 238-6570

Date: July 27, 2017

F:\Home\SJO\DOCS\ALCOIL USA, LLC\Pleadings\Financing\Motion.wpd   7

Case 1:17-bk-03078-HWV   Doc 12   Filed 07/27/17   Entered 07/27/17 16:46:07   Desc
Main Document   Page 7 of 7